## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **Kiea Hutty**<br>**102 Grand Central Avenue**<br>**Apt. 222**<br>**Owings Mills, MD 21117**<br><br>　　　**Plaintiff,**<br><br>**v.**<br><br>**PNC Bank**<br>**PNC Tower**<br>**300 5ᵗʰ Avenue**<br>**Pittsburgh, PA 15222**<br><br>　　　**Defendant.** | **Case No.:** 21-2535<br><br><br><br>**JURY TRIAL DEMANDED** |

### COMPLAINT

**COMES NOW**, Plaintiff Kiea Hutty ("Ms. Hutty"), by the undersigned counsel, and complains of Defendant PNC Bank ("PNC"), as follows:

### INTRODUCTION

1. This is an action authorized and instituted pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 et seq. ("Title VII") and the Civil Rights Act of 1866, Section 1981(a) ("Section 1981") 42 U.S.C. § 1320d-6 *et seq*., and the Maryland Fair Employment Practices Act Md. Code § 20-601 *et seq*. (FEPA) for the Defendant's unlawful discharge, discrimination, and hostile work environment based on race (African American), sex (female), disability, and retaliation (prior statutorily protected activity) against the Plaintiff.

2. Plaintiff brings this case for breach of contract to recover damages as a result of an unlawful and prejudicial discharge from her position as Business Branch Center Manager at PNC Bank located in Timonium, MD.

## EXHAUSTION OF REMEDIES

3. Plaintiff has exhausted all of her administrative remedies.

4. Plaintiff filed a complaint with the Baltimore Field Office of the U.S. Equal Employment Opportunity Commission (EEOC) alleging race (African American) and sex (female) discrimination and retaliation.

5. On July 7, 2021,  the EEOC issued Plaintiff a Right-to-Sue Letter.

6. Accordingly, Plaintiff timely files this action in accordance with the Notice of Rights, which provided Plaintiff the right to file this Complaint within 90 days of receipt of the Notice.

## JURISDICTION AND VENUE

7. This Honorable Court has subject matter jurisdiction over this suit pursuant to 28 U.S.C. §§ 1331 as it asserts a claim that arises under the Constitution, laws or treaties of the United States, specifically Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, et seq., and Section 1981, to redress and enjoin the employment practices of Defendant.

8. Further, this Court has subject matter jurisdiction over this suit pursuant to 42U.S.C.§ 2000e-16(a) and (c), incorporating 42 U.S.C. § 2000e-5(f) (3).

9. This Honorable Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1343.

10. Venue is appropriate because a substantial part of the actions complained of are the result of actions and employment practices of Defendant, which operates in Towson, Maryland.

11. Additionally, venue is proper in the District of Maryland Court pursuant to 28 U.S.C. §§ 1391(b) and (e) because a substantial part of the wrongful conduct complained of herein occurred in this District, Defendant transacts substantial business in this District, and Defendant maintains employment records related to this action in the District of Maryland.

## THE PARTIES

12. Plaintiff, Kiea Hutty, is an adult resident and domiciliary of the State of Maryland.  In addition to working in finance where she assists small businesses in their economic development, Ms. Hutty has a personal interest in philanthropy and providing for her local community.

13. Defendant, PNC Bank, promotes itself as being a diverse and welcoming body, with a goal that they "champion a culture where employees feel **confident** presenting their ideas and are **valued** for their abilities."[1]

14. Defendant has its principal place of business in Pennsylvania but operates branches nationwide, including in Towson, MD.

## NATURE OF THE ACTION

15. Plaintiff brings this action to recover all legal and equitable remedies available for Defendant's discrimination and retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), including back pay, front pay, and compensatory damages in an amount to be determined by the jury that would fully compensate her for the economic loss, physical and psychological injury, humiliation, embarrassment, and

---

[1] https://www.pnc.com/en/about-pnc/corporate-responsibility/diversity-and-inclusion.html?lnksrc=topnav

mental and emotional distress, prejudgment interest, attorneys' fees, expenses, and costs of the action.

16. Plaintiff's damages are significant, including, but not limited to, the loss of reputation, career advantage, emotional tranquility, and denial of her constitutional and statutory rights.

## FACTS COMMON TO ALL COUNTS

17. Plaintiff began working for Defendant, PNC Bank, on December 7, 2015, as a Business Branch Manager.

18. Plaintiff's position required her oversight on many different issues and transactions that occurred in that branch, as well as a requirement that she become and maintain a notary public. Plaintiff fulfilled all obligations, including maintaining her notary public license, throughout her tenure with PNC Bank.

19. On or around December 2018, Plaintiff began pursuing a Business Banker position at the Philadelphia, PA, PNC Bank location.

20. On or around May 21, 2019, Plaintiff was called into a meeting in her office with Market Leader Matthew Martin, and Regional Manager, Lisa Schwartz, both employees of Defendant.  During this meeting, Mr. Martin and Ms. Schwartz impressed upon Plaintiff how excited they were with her team, and they could not wait to help them "win more awards." This was also the first instance in which Plaintiff met Ms. Schwartz. The meeting was then rescheduled to another location to continue.

21. On that same day, Plaintiff, Mr. Martin, and Ms. Schwartz continued their meeting from earlier, and surprisingly presented Plaintiff with a corrective action document that alleged several incorrect and false assertions regarding Plaintiff's work performance. Amongst

other fictional accusations, Defendant stated that Plaintiff refused to become a notary public, when she has remained certified as such for the entirety of her employment with Defendant. Defendant also stated that Plaintiff has failed to open any accounts in the past month, despite Plaintiff recently receiving praise for her branch's performance. Although taken back considering the earlier meeting's tone, this was not the first time Plaintiff had heard of an African American or woman employee having incorrect assertions placed in their file. Plaintiff admitted the same to Mr. Martin and Ms. Schwartz and that she felt like these allegations were being made against her as an act of discrimination. Plaintiff orally contested the discrepancies attributed to her, and Mr. Martin and Ms. Schwartz assured Plaintiff that the information would be corrected, and a third meeting would be scheduled to discuss such. Plaintiff also informed Mr. Martin and Ms. Schwartz that she was actively pursuing a different position with the Philadelphia PNC Bank location for their Business Banker position.

22. Later that day, on May 21, 2019, Plaintiff filed a EEOC Complaint for race and sex discrimination against Mr. Martin and Ms. Schwartz, due to the false allegations made against her. Plaintiff was aware of other black and female employees who had similarly received baseless allegations regarding negative work performance added to their file. In addition to the false allegations made against Plaintiff, similarly situated white, male employees such as Matthew Will – a PNC Bank employee, who started the same position as Plaintiff around the same time – were not subject to this scrutiny and work conditions.

23. On or around May 22, 2019, only hours after Plaintiff had informed Mr. Martin and Ms. Schwartz of her interest in the Business Banker position, Plaintiff was informed that she was rejected for said position at the Philadelphia PNC Bank.

5

24. On or around June 2019, within weeks of Ms. Hutty filing a charge of discrimination against Ms. Schwartz & Mr. Martin, Mr. Martin contacted Plaintiff to inform her that the corrective action document containing false information would not be corrected. No explanation was provided for why this course of action was taken.

25. On or around June 24, 2019, Plaintiff sent an email to her immediate manager. She requested the closing of an account for a customer who called both Plaintiff and Plaintiff's employee a racial epithet. Plaintiff's manager forwarded that information to Mr. Martin. Plaintiff's manager then attempted to persuade Plaintiff that because the customer was "ignorant", Plaintiff should reconsider having his account closed.  She ignored the clear harm and conflict of having a customer state that he did not like coming to Plaintiff's branch because 'there are always too many *n\*\*\*ers* there.'  Plaintiff reiterated her professional desire and to have this account closed, yet her complaint was dismissed.

26. Around this time, Defendant threatened to place Plaintiff on probation without justification.

27. Also in June 2019, Plaintiff was alerted by one of her employees that she had recently been called into an unscheduled meeting by Mr. Martin.  Mr. Martin accosted her attempting to solicit disparaging remarks about Plaintiff, until the employee expressed discomfort and the meeting ended.

28. Ms. Hutty became distraught after the constant badgering, scrutinizing and hostile work environment and consequentially, requested to go on short term disability. Instead of providing support to a prized employee, Defendant denied Ms. Hutty's request.

29. On or around July 2019, Plaintiff, after exhausting all other options, was forced to take an unpaid leave of absence under the Family and Medical Leave Act ("FMLA").

30. On or around September 6, 2019, Plaintiff received a letter from PNC Bank stating that she was out on unprotected leave and that she was required to contact PNC Bank's Human Resources immediately.

31. On or around September 12, 2019, Plaintiff responded to this letter and informed Human Resources that she was out on leave addressing her sever illness and that she could provide medical documentation of such. She suggested that per her doctor's recommendations, she could return to work with an accommodation to work remotely.

32. Ms. Hutty's request for a reasonable accommodation was summarily denied.

33. On or around October 19, 2019, Plaintiff returned to work after being on FMLA leave.

34. On or around November 2019, Defendant informed Plaintiff that an investigation had been launched regarding her FMLA leave request from June 2019.  When Plaintiff asked about said investigation occurring after she filed her EEOC claim, on May 21, 2019, Defendant provided the ludicrous pretext that this investigation (for leave requested in June 2019) had been started prior to the EEOC claim (filed May 2019).

35. On November 20, 2019, as part of the investigation, Plaintiff was further humiliated as she was subjected to salacious rumors and racially- charged questions. Defendant's inquiry, conducted by Employee Relations Specialist Chanel Travers, suggested that Plaintiff was in Los Angeles while on FMLA leave. After Plaintiff denied this accusation, Defendant claimed to know such because unnamed persons called Defendant to advise them that Plaintiff was in Los Angeles, California.

36. Ms. Travers also asked Plaintiff additional racially-charged allegations. These stereotypical allegations would not have been alleged but for Plaintiff's protected status as an African American and as a woman. These stereotypical and unsubstantiated allegations

7

covered such topics as: whether Plaintiff used company time to receive cosmetic nail care or whether Plaintiff was running a personal business out of the bank, both implying an inability of Ms. Hutty to behave professionally or respect her responsibilities as a Manager.

37. Plaintiff refused to lose her composure at these allegations, knowing how other African American employees had received negative notations after reacting to such frivolous and racist claims. Surprised by Plaintiff's restraint, Defendant attempted to further provoke her asking "if she was upset?" and noting how 'she would be angry if she was [Plaintiff]' and how "she would be mad if people told her to accept facts that were not true."

38. On or around November 26, 2019, PNC Bank called Plaintiff and informed her that she was being terminated for being late to a conference call.  Plaintiff's manager asked her if she was on the conference call, which she affirmed stating she was at another branch when she took the call and got on approximately fifteen (15) minutes late. Without any evidence to the contrary, Plaintiff's manager accused her of lying and not being present for the call. This was deemed to be the action which prompted Plaintiff's termination.

39. Oddly, the investigation over her FMLA leave which had "started in June 2019", her "poor performance", and "refusal" to be certified as a public notary (when she was currently certified) were not cited during this termination phone call, only that Plaintiff lied about being on a conference call, for which she was fifteen minutes late.

40. Plaintiff had been a stellar employee of PNC Bank and had worked tirelessly to ensure that all goals, objectives, and performances were met during her tenure.  Further, despite these assertions, Plaintiff has consistently exceeded every performance threshold set during her time at PNC Bank.  Moreover, Plaintiff had in fact been licensed as a notary public throughout the entirety of her employment and was able to provide documentation

substantiating her assertions. Yet for unknown reasons, PNC Bank routinely dismissed these attempts.

41. Defendant terminated Plaintiff not based on performance, FMLA leave nor notary public certification.  Rather, Defendant terminated Plaintiff because of her membership in a protected class and in retaliation for her previous statutorily protected activity that highlighted racist practices undertaken by PNC Bank, and a hostile work environment that female and African American employees were forced to endure.

42. PNC Bank has discriminately and prejudicially harassed, bullied, and tormented Plaintiff for no other reason aside from her race and sex.

43. Plaintiff's supervisors, employees of Defendant, made it their mission to single-out Plaintiff and force her out of her position for no other reason aside from her race and sex.

44. Plaintiff was forced to file suit due to the Defendant's inability to remedy their unlawful conduct, which Defendant knew to be occurring, that has now cost Plaintiff significant financial strain as well as emotional distress.

45. The Defendant's discriminatory and retaliatory practices have been effectuated in violation of Title VII of the Civil Rights Act.

## COUNT I

### Race Discrimination in Violation of Title VII of the Civil Rights Act of 1964

46. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

47. A *prima facie* case of race discrimination requires a showing of four (4) elements: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an

adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.

48. Plaintiff, as an African American, is considered a member of a protected class as stipulated under Title VII of the Civil Rights Act of 1964.

49. Plaintiff is a qualified notary public and branch manager for which she has both the educational requirements as well as professional experience to manage an entire bank branch.

50. Plaintiff suffered an adverse employment action directly related to her position of being a protected class member as recognized under Title VII of the Civil Rights Act of 1964, when Defendant prevented Plaintiff's attempt to obtain the Business Banker position at the Philadelphia branch of PNC Bank.

51. Plaintiff suffered an adverse employment action directly related to her position of being a protected class member as recognized under Title VII of the Civil Rights Act of 1964, when Defendant knowingly refused to remove incorrect information about Plaintiff from a corrective action document, and subsequently her employee file.

52. Plaintiff suffered an adverse employment action directly related to her position of being a protected class member as recognized under Title VII of the Civil Rights Act of 1964, when Defendant denied Plaintiff's request for FMLA leave, and subsequently her request for a reasonable accommodation of working from home.

53. Plaintiff suffered an adverse employment action directly related to her position of being a protected class member as recognized under Title VII of the Civil Rights Act of 1964, when Defendant unlawfully terminated Plaintiff's employment for discriminate false allegations

regarding her work performance, including her inability to maintain a notary public license, despite Plaintiff's efforts and known ability to demonstrate the falsity of these accusations.

54. Defendant has a history of disparately treating employees of color with greater scrutiny and reprimand than that of similarly situated white employees, such as Matthew Will, a white male.

55. Because of her race, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint in violation of Title VII.

56. Defendant's foregoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiff's employment.

57. Defendant knew that Plaintiff was African American prior to the adverse actions described throughout the Complaint and was aware, or should have been aware, of the discrimination Plaintiff was subjected to because of her race.

58. Plaintiff has been treated differently and subjected to different terms and conditions of her employment due to her race.

59. Other similarly- situated non-Hispanic or Caucasian employees such as Matthew Will, have been treated more favorably than Plaintiff with regards to the terms and conditions of employment and workplace conditions.

60. Plaintiff's race was a determining factor in Defendant's unlawful conduct toward Plaintiff.

61. Plaintiff's race was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

62. The difference in treatment sufficiently demonstrates that the adverse employment action received by Plaintiff gives an inference of race discrimination and prejudice.

63. Plaintiff has suffered significant emotional, physical, and financial distress as a result of the unlawful actions and conduct of Defendant.

64. **WHEREFORE**, Plaintiff respectfully requests that the Court GRANT an award of compensatory damages against Defendant that exceeds $500,000, specific performance, and award such other and further relief deemed fair and just.

<u>COUNT II</u>

**Sex Discrimination in Violation of Title VII of the Civil Rights Act of 1964**

65. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

66. A *prima facie* case of sex discrimination requires a showing of four (4) elements: (1) she is a member of a protected class; (2) she was qualified for the position; (3) she suffered an adverse employment action; and (4) the action occurred under circumstances giving rise to an inference of discrimination.

67. Plaintiff is a woman and therefore considered a member of a protected class as stipulated under Title VII of the Civil Rights Act of 1964.

68. Plaintiff is a qualified notary public and branch manager for which she has both the educational requirements as well as professional experience to manage an entire bank branch.

69. Plaintiff suffered an adverse employment action directly related to her position of being a protected class member as recognized under Title VII of the Civil Rights Act of 1964, when Defendant prevented Plaintiff's attempt to obtain the Business Banker position at the Philadelphia branch of PNC Bank.

70. Plaintiff suffered an adverse employment action directly related to her position of being a protected class member as recognized under Title VII of the Civil Rights Act of 1964, when

Defendant knowingly refused to remove incorrect information about Plaintiff from a corrective action document, and subsequently her employee file.

71. Plaintiff suffered an adverse employment action directly related to her position of being a protected class member as recognized under Title VII of the Civil Rights Act of 1964, when Defendant denied Plaintiff's request for FMLA leave, and subsequently her request for a reasonable accommodation of working from home.

72. Plaintiff suffered an adverse employment action directly related to her position of being a protected class member as recognized under Title VII of the Civil Rights Act of 1964, when during Defendant's fraudulent investigation of Plaintiff, she was asked insulting irrelevant questions related to her nail care and healthcare.  Plaintiff would not have been asked such intrusive questions but for her status as a protected class member as a woman.

73. Plaintiff suffered an adverse employment action directly related to her position of being a protected class member as recognized under Title VII of the Civil Rights Act of 1964, when Defendant unlawfully terminated Plaintiff's employment for discriminate false allegations regarding her work performance, including her inability to maintain a notary public license, despite Plaintiff's efforts and known ability to demonstrate the falsity of these accusations.

74. Defendant has a history of disparately treating female employees with greater scrutiny and reprimand than that of male employees. such as Matthew Will, a white male.

75. Because of her sex, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint in violation of Title VII.

76. Defendant's foregoing unlawful adverse actions materially affected the terms, privileges, and conditions of Plaintiff's employment.

77. Defendant knew that Plaintiff was a woman prior to the adverse actions described throughout the Complaint and was aware, or should have been aware, of the discrimination Plaintiff was subjected to because of her sex.

78. Plaintiff has been treated differently and subjected to different terms and conditions of her employment due to her sex.

79. Other similarly- situated male employees such as Matthew Will, have been treated more favorably than Plaintiff with regards to the terms and conditions of employment and workplace conditions.

80. The difference in treatment sufficiently demonstrates that the adverse employment action received by Plaintiff gives an inference of sex discrimination and prejudice.

81. Plaintiff's sex was a determining factor in Defendant's unlawful conduct toward Plaintiff.

82. Plaintiff's sex was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

83. The difference in treatment sufficiently demonstrates that the adverse employment action received by Plaintiff gives an inference of sex discrimination and prejudice.

84. Plaintiff has suffered significant emotional, physical, and financial distress as a result of the unlawful actions and conduct of Defendant.

85. **WHEREFORE**, Plaintiff respectfully requests that the Court GRANT an award of compensatory damages against Defendant that exceeds $500,000, specific performance, and award such other and further relief deemed fair and just.

## <u>COUNT III</u>

### Hostile Work Environment as a Result of Race and Sex Discrimination

86. Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

87. To establish a claim of hostile work environment based on unlawful discrimination, Plaintiff must prove the following four elements: (1) she belongs to a statutorily protected class; (2) she was subjected to harassment in the form of unwelcome verbal or physical conduct; (3) the harassment complained of was based on her statutorily protected class; (4) the harassment affected a term or condition of employment[2] and/or had the purpose or effect of unreasonably interfering with the work environment and/or creating an intimidating, hostile, or offensive work environment; and (5) there is a basis for imputing liability. *See Henson v. City of Dundee*, 682 F.2d 897 (11th Cir. 1982); *Humphrey v. United States Postal Service*, EEOC Appeal No, 01965238 (October 16, 1998); *Harris v. Forklift Systems, Inc.*, 510 U.S. 17, 21 (1993).

88. Here, the five (5) elements of a *prima facie* case of a hostile work environment are met. Plaintiff belongs to statutorily protected classes as an African American and a woman. Plaintiff was subjected to harassment in the form of unlawful and inappropriate misconduct, the victim of Defendant's knowingly baseless and damaging allegations regarding her work performance and her inability to meet objectives and goals, and intimidation to pressure her into withdrawing her EEOC discrimination claim against Defendant, and in retaliation thereafter for not withdrawing said complaint and for requesting to close a customer's account for spewing racial epithets at Plaintiff over voicemail.

---

[2] The phrase "terms, conditions and privileges of employment" in Title VII is an expansive concept which sweeps within its protective ambit the practice of creating a working environment heavily charged with racial discrimination (or retaliation). One can readily envision working environment so heavily polluted with discrimination as to destroy completely the emotional and psychological stability of group of workers. *Rogers v. EEOC*, 454 F.2d 234 (1971).

89. Furthermore, in a series of meetings, starting May 21, 2019, Matthew Martin and Lisa Schwartz (both managers for Defendant with supervisory roles over Plaintiff) confronted Plaintiff and included false statements in her employee file. These false statements, claimed amongst other fictions that Plaintiff had failed to maintain her status as a notary public. Not only was this part of Plaintiff's job requirement, but it was known to be false as 1) Plaintiff maintained her certification throughout her entire employment with Defendant; 2) Defendant had access to Plaintiff's certification and was able to verify that she was current; and 3) once Plaintiff was alerted to Defendant's allegation, Plaintiff immediately corrected Defendant, furnishing proof of her certification.

90. Additional false claims to Plaintiff's record alleged that under her watch as Branch Manager, the Timonium Branch of PNC failed to open any additional accounts.

91. Ms. Schwartz and Mr. Martin initially agreed to remove these fabrications, but on or about, one week later, Ms. Schwartz advised Plaintiff that the incorrect information would remain on her record.

92. Defendant continued this harassment by threatening to place Plaintiff on probation due to her "performance" with no factual basis of her performance being less than excellent, by subsequently denying Plaintiff short -term disability & FMLA leave, by pseudo-investigating Plaintiff's FMLA leave which she took after being denied for short term disability, by attempting to provoke Plaintiff with ludicrous racially- charged questions based in stereotypes and not reality, and finally, by terminating Plaintiff without cause due to her being 15 minutes late for a conference call.

93. Several terms and conditions of Plaintiff's employment were severely negatively impacted by Mr. Martin's, Ms. Schwartz's and Ms. Travers' conduct. There is a basis for imputing

liability, where the aforementioned managers/ employees of PNC Bank, acting on Defendant's behalf, and subjected the Plaintiff to the above-mentioned harassment, because of her statutorily protected class as an African American woman.

94. The actions and conduct of the Defendant as set forth herein created a hostile, offensive, and intimidating work environment that detrimentally affected Plaintiff to the brink of a mental breakdown, requiring her to take medical leave to prevent further harm.

95. The actions and conduct by the Defendant as set forth herein were severe, hostile, and pervasive and constituted discrimination based on sex and race.

96. The actions and conduct described herein would have detrimentally affected a reasonable person of the same sex and race in Plaintiff's position.

97. Defendant knew or should have known of the hostile work environment described herein. Defendant has failed to address the problems and further failed to implement effective and appropriate measures to stop the hostile work environment.

98. By failing to protect Plaintiff within the Department; and by allowing for Caucasian male employees, such as Matthew Will to receive more favorable treatment than Plaintiff in the terms and conditions of his employment, Defendant exacerbated the hostile work environment suffered by Plaintiff, and intentionally discriminated against Plaintiff in violation of Title VII.

99. Defendant's actions, and failure to act, amounted to discrimination based on race and sex under Title VII.

100.     Defendant's actions are part of a larger toxic workplace culture where employees of color and female employees are not valued and experience higher rates of turnover then their white, male counterparts.

101.     As a direct result of Defendant's above-mentioned unlawful acts, Plaintiff has suffered damages, including but not limited to lost wages and emotional and mental distress.

102.     The above conduct was enabled and encouraged by Defendant and was imputable on a factual basis to Defendant, thereby creating an abusive, hostile environment for Plaintiff that made it difficult for her to perform essential functions.

103.     Defendant's inability to cease the above conduct and remedy the effects of this unlawful personnel action further demonstrates their contribution to the hostile work environment experienced by Plaintiff.

104.     Plaintiff has suffered irreparable harm, both professionally and personally, as a result of this unlawful conduct.

105.     **WHEREFORE**, Plaintiff respectfully requests that the Court GRANT an award of compensatory damages against Defendant that exceeds $500,000, specific performance, and award such other and further relief deemed fair and just.

## COUNT IV

### Family and Medical Leave Act ("FMLA") Interference

106.     Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

107.     "To establish unlawful interference with an entitlement to FMLA benefits, an employee must prove that: (1) she was an eligible employee; (2) her employer was covered by the statute; (3) she was entitled to leave under the FMLA; (4) she gave her employer adequate notice of her intention to take leave; and (5) the employer denied her FMLA

18

benefits to which she was entitled." *Sherif v. University of Maryland Medical Center*, 127 F.Supp.3d 470, 477 (D. Md. 2015).

108.	Plaintiff was an employee with PNC Bank, then eligible to receive FMLA benefits.

109.	Defendant is an employer covered by the FMLA statute.

110.	Plaintiff was entitled to leave under FMLA due to her severe medical illness causing several physical ailments further exacerbated by Plaintiff's work environment.

111.	Plaintiff provided Defendant adequate notice and information regarding her intention to utilize her FMLA benefits.

112.	Defendant unlawfully and capriciously denied Plaintiff access to leave which she was legally entitled, with the intention to debase, harass, and belittle Plaintiff.

113.	Defendant unlawfully and capriciously denied Plaintiff access to leave when on September 6, 2019, Defendant revoked said leave prematurely notifying Plaintiff that she was on "unprotected leave."

114.	Plaintiff has suffered irreparable harm and injury as a result of this unlawful misconduct.

115.	**WHEREFORE**, Plaintiff respectfully requests that the Court GRANT an award of compensatory damages against Defendant that exceeds $500,000, specific performance, and award such other and further relief deemed fair and just.

<u>**COUNT V**</u>

**Family and Medical Leave Act ("FMLA") Retaliation**

116.	Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

117.      Retaliation claims under FMLA and Title VII are analyzed under the same burden-shifting framework of *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L. Ed. 2d 668 (1973). *Yashenko v. Harrah's NC Casino, Co., LLC*, 446 F.3d 541, 550-51 (4th Cir. 2006); *Howerton v. Board of Educ. of Prince George's Cty.*, No. TDC-14-0242, 2015 U.S. Dist. LEXIS 109787, 2015 WL 4994536, at \*17 (D. Md. Aug. 19, 2015).

118.      Under this framework, Plaintiff must first establish a *prima facie* case of retaliation. To establish a *prima facie* claim of retaliation, a plaintiff must show that "(1) she engaged in protected activity; (2) the employer acted adversely against her; and (3) there was a causal connection between the protected activity and the asserted adverse action." *Ziskie v. Mineta*, 547 F.3d 220, 229 (4th Cir. 2008) (citing *Holland v. Washington Homes, Inc.*, 487 F.3d 208, 218 (4th Cir. 2007)).

119.      Plaintiff engaged in protected activity by reporting several instances of misconduct that occurred at PNC Bank, including but not limited to, race discrimination, sex discrimination, and abuse of power, both to her supervisors and in an EEOC Complaint.

120.      Defendant responded to this protected activity with the adverse employment actions of preventing Plaintiff from obtaining a transfer, unlawfully and arbitrarily denying Plaintiff's leave of absence request under FMLA, for which she is entitled, and subsequently unlawfully discharging Plaintiff without cause.

121.      There is a direct, causal connection between Plaintiff's protected activity and the immediate retaliatory misconduct of Defendant of prohibiting her entitled use of FMLA leave.

122.      Plaintiff has suffered irreparable harm and injury as a result of this unlawful misconduct.

123.     **WHEREFORE**, Plaintiff respectfully requests that the Court GRANT an award of compensatory damages against Defendant that exceeds $500,000, specific performance, and award such other and further relief deemed fair and just.

**COUNT VI**

**Wrongful Termination**

124.     Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

125.     Employment agreements in Maryland are presumptively at-will. However, a contract may "overcome that presumption and create an employment relationship whereby the employee may be terminated only for just cause." *Harig v. Progress Rail Servs. Corp.*, 166 F. Supp. 3d 542, 550, 2015 U.S. Dist. LEXIS 169896, *14. *See also Towson Univ. v. Conte*, 384 Md. 68, 862 A.2d 941, 947 (Md. 2004).

126.     Plaintiff and Defendant memorialized an employment agreement on December 7, 2015.

127.     Plaintiff maintained and fulfilled all her obligations and responsibilities as outlined in the employment agreement.

128.     Plaintiff did not at any point during her employment with PNC Bank violate any terms of the at-will employment agreement.

129.     Plaintiff was terminated over the phone with little explanation, as Defendant terminated her with no basis. The investigator did not mention Plaintiff's performance, FMLA leave nor notary public certification.   Rather, Defendant terminated Plaintiff because of her membership in a protected class and in retaliation for her previous statutorily

protected activity that highlighted racist practices undertaken by PNC Bank, and a hostile work environment that female and African American employees were forced to endure.

130.    Defendant did not conduct a thorough and meticulous investigation, but rather made an arbitrary and capricious finding that Plaintiff had not attended a conference call meeting despite her indicating that she was at another branch when she took the call and got on approximately fifteen (15) minutes late. This is the pretext being relied on to justify Plaintiff's discharge.

131.    Defendant has a documented history of making baseless accusations against Plaintiff as pretext to substantiate a valid dismissal.

132.    Defendant's decision to terminate Plaintiff is directly related to Plaintiff's pushback of prejudicial policies that have disparately impacted people of color.

133.    Defendant's decision to terminate Plaintiff is against the public policy foundations of an at-will agreement as the dismissal was in retaliation for Plaintiff vocalizing the prejudicial systemic and prejudicial treatment occurring at PNC Bank.

134.    Defendant's unlawful conduct has caused Plaintiff to suffer substantial emotional, physical, and financial distress.

135.    **WHEREFORE**, Plaintiff respectfully requests that the Court GRANT an award of compensatory damages against Defendant that exceeds $500,000, specific performance, and award such other and further relief deemed fair and just.

## COUNT VII

### Violation of Title VII – Retaliation

136.    Plaintiff re-alleges and incorporates by reference each and every allegation in the paragraphs above, as if fully set forth herein.

137.    Soon after complaining of race discrimination, Plaintiff was subjected to the unlawful conduct and adverse actions alleged throughout this Complaint in violation of Title VII.

138.    PNC Bank must comply with Title VII, and by and through their conduct, violated the law.

139.    Defendant subjected Plaintiff to the aforementioned adverse employment actions because of her opposition to the unlawful and discriminatory employment practices of Defendant in violation of Title VII.

140.    Defendant, including Plaintiff's supervisors, knew of Plaintiff's engagement in protected activity prior to them engaging in the aforementioned adverse actions. Defendant's knowledge can be shown when they were informed by Plaintiff directly, advised by an EEOC representative, or otherwise should have known that Plaintiff engaged in the complaint process based on her informal and formal complaint filings. The adverse retaliatory actions (of allowing false statements to remain in Plaintiff's file, preventing her transfer to another branch, denying her FMLA leave, conducting a sham investigation into her leave and subsequently terminating Plaintiff for lacking punctuality to one meeting) to which Plaintiff has been subjected to are a direct result of Plaintiff having previously engaged in statutorily-protected activity.

141.    Plaintiff's prior protected activity was a determining factor in Defendant's unlawful conduct toward Plaintiff.

142.    Plaintiff's prior protected activity was a motivating factor in Defendant's unlawful conduct toward Plaintiff.

143.     Similarly situated employees (no known prior EEOC activity) were not subjected to the same, similar, or any adverse treatment.

144.     Defendant's unlawful conduct has created a climate of fear and isolation for Plaintiff and other employees, creating a chilling effect in violation of Title VII.

145.     The reasons proffered by Defendant for its unlawful conduct are pretextual and Defendant cannot further offer any legitimate reason for its unlawful conduct.

146.     Defendant's unlawful conduct negatively impacted the terms, conditions, and privileges of Plaintiff's employment.

147.     Defendant's retaliatory conduct has been intentional, deliberate, willful, malicious, reckless and in callous disregard of the rights of Plaintiff because of her participation and opposition to Defendant's discriminatory conduct.

148.     Defendant is directly liable for the discriminatory acts or omissions of its agents, servants and employees while acting within the course and scope of their employment, under the theory of *Respondeat Superior*.

149.     As a direct and proximate cause of Defendant's conduct alleged throughout this Complaint, Plaintiff suffered and continues to suffer from harm, injury and monetary damages – including but not limited to past and future loss of income, benefits, career opportunities, medical expenses and costs – and is entitled to all available legal and equitable remedies.

150.     Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering, and her injury is permanent in nature. Further, Defendant's treatment and actions were ongoing.

151.    Plaintiff has incurred lost wages, loss of reputation, defamation of character, and loss of career opportunity now and into the future, and all of the other losses stated with Plaintiff contributing in any way thereto.

152.    Defendant is directly liable for the discriminatory acts or omissions of its employees while acting within the court and scope of their employment, under the theory of *Respondeat Superior*.

153.    Defendant's actions were intentional, reckless, and malicious.

154.    As a direct and proximate cause of Defendant's conduct alleged throughout this complaint, Plaintiff suffered and continues to suffer from harm, injury, and monetary damages—including but not limited to past and future loss of income, benefits, and career opportunities—and is entitled to all available legal and equitable remedies.

155.    Plaintiff was humiliated, embarrassed, and made to endure a great amount of pain and suffering. Plaintiff's injury is permanent in nature. Further, Defendant's actions were ongoing.

156.    Plaintiff has incurred lost wages, loss of reputation, defamation of character now and into the future, and all of the other losses stated with Plaintiff not contributing in any way thereto.

157.    **WHEREFORE**, Plaintiff respectfully requests that the Court GRANT an award of compensatory damages against Defendant that exceeds $500,000, specific performance, and award such other and further relief deemed fair and just.

## COUNT VIII

## VIOLATION OF MARYLAND FAIR EMPLOYMENT PRACTICES ACT ("FEPA")

158.    Plaintiff realleges and incorporates by reference each of the preceding paragraphs as if fully set forth herein.

159.    The Maryland Fair Employment Practices Act (FEPA), Md. Code Ann., State Gov't, § 20-601 *et seq*. outlaws discrimination in employment based on race, color, religion, sex, age, national origin, marital status, sexual orientation, gender identity, genetic information, or disability by employers with more than 15 employees.

160.    Under FEPA, an employer can be held legally responsible if the person responsible for the harassment can make or recommend employment decisions (e.g., hiring and firing, promotion and demotion, and reassignments) **or** directs, supervises, or evaluates the work activities of the employee, even if that person does not have the power to make employment decisions.  Additionally, an employer can be liable if its own negligence leads to harassment or enables harassment to continue.

161.    Harassment is unwelcome or offensive conduct that is based on "race, color, religion, ancestry or national origin, sex, age, marital status, sexual orientation, gender identity, or disability."

162.    When Defendant intentionally harassed Plaintiff due to her race or gender, denied her request for FMLA and finally when Defendant unlawfully terminated Plaintiff due to her race or gender their conduct was in violation of the FEPA.

163.    **WHEREFORE**, Plaintiff respectfully requests that the Court GRANT an award of compensatory damages against Defendant that exceeds $500,000, specific performance, and award such other and further relief deemed fair and just.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays that this Honorable Court:

1. Award damages including but not limited to repayment to Plaintiff, out of pocket expenses, and ancillary expenses and costs;

2. Award compensatory damages in the amount of $500,000;

3. Enter a declaratory judgement finding that the foregoing actions of Defendant violated Maryland law;

4. Enter an amount equal to the tax on any award, interest, and costs;

5. Enter a permanent injunction directing Defendant to take all affirmative steps necessary to remedy the effects of the illegal conduct described herein and to prevent similar occurrences in the future;

6. Award Plaintiff reasonable attorneys' fees and costs incurred in this action; and

7. Order such other relief as this Court deems just and equitable.

## JURY TRIAL

Plaintiff requests a jury trial for all issues so triable herein.


Dated: October 4, 2021


Respectfully submitted,

By: /s/ Dionna Maria Lewis

Dionna Maria Lewis, Esq.
(Bar No. 19486)
District Legal Group, PLLC
700 Pennsylvania Ave SE, Suite
2098 Washington, D.C. 20003
Tel. (202) 486-3478 |
Dionna@DistrictLegalGroup.com
*Counsel for Kiea Hutty*