IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **KIEA HUTTY,** | * |
| **Plaintiff,** | * |
| v. | * |
| **PNC BANK, N.A.,** | *     **CIVIL NO. JKB-21-2535** |
| **Defendant** | * |

\*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*   \*

**MEMORANDUM**

Plaintiff Kiea Hutty filed this case against Defendant PNC Bank, N.A. ("PNC") on October 4, 2021, asserting claims under Maryland common law, Title VII of the Civil Rights Act of 1964 ("Title VII"), the Maryland Fair Employment Practices Act ("MFEPA"), and the Family and Medical Leave Act ("FMLA"). (ECF No. 1.) Currently pending is PNC's Motion for Summary Judgment. (ECF No. 65.) No hearing is necessary. *See* Local Rule 105.6 (D. Md. 2023). For the reasons set forth below, the Motion will be granted.

    **I.**      *Factual Background and Procedural History*[1]

On December 7, 2015, PNC hired Plaintiff, an African American woman, to work as a Banking Center Manager at its Timonium, Maryland branch. (ECF No. 65-1 at 2.) Plaintiff was managed by a woman named Lisa Schwartz from May 2019 to November 2019. (*Id.*) While employed, Plaintiff was bound by PNC's "Fidelity Bonding Policy," which provides, in pertinent part, that PNC employees are expected to "cooperate with all investigations and inquiries as

---

[1] Unless otherwise indicated, the facts recited herein are undisputed.

directed by PNC and to provide honest and candid answers. Failure to do so may result in termination of . . . employment, even if [the employee] did not otherwise commit a dishonest act." (*Id.* at 2–3.) Plaintiff was also bound by PNC's "Code of Business Conduct and Ethics," which requires PNC employees to "act in a professional, honest, and ethical manner." (*Id.* at 3.)

On April 18, 2018, Plaintiff complained to a supervisor that a customer used the "N-word" in a voicemail sent to another PNC employee. (ECF No. 65-12 at 2; ECF No. 65-30 at 21.) Plaintiff asked PNC to "end [its] relationship" with the customer. (ECF No. 65-12 at 2.) PNC closed the customer's account and Plaintiff never saw or spoke with the customer. (ECF No. 65-1 at 4, ECF No. 68-1 at 3.)

From June 26, 2019 to September 18, 2019, Plaintiff took a leave of absence from PNC pursuant to the FMLA. (ECF No. 65-1 at 9.) When her FMLA leave expired on September 18, 2019, Plaintiff did not immediately return to work. (*Id.*) On September 20, 2019, Ms. Schwartz requested approval from PNC's employee relations staff to replace Plaintiff. (ECF No. 68-15 at 1.) Plaintiff returned to work on October 2, 2019. (ECF No. 65-1 at 9.)

On November 7, 2019, Ms. Schwartz sent an email to PNC's employee relations inbox in which she relayed the following account of an incident involving herself, Plaintiff, and Marc Eaton, a PNC branch manager (the "November 6, 2019 Incident"):

> Kiea Hutty[] . . . lied to me . . . about being on a conference call that she was required to be on from 8:30-9:00 yesterday. At 8:49 am, I took a screenshot of the participant list and then noticed that she was just walking into the office at 8:55 am. After the call, I walked into the branch and asked her why she wasn't on the call. She got a defensive tone and said that she was on the call, but on her cell phone. I replied that there were no guests listed on the participant list. She just talked over me and said when she got into the branch she joined the call with [Mr. Eaton].

(ECF No. 65-26 at 2.) A PNC employee relations investigator, Chanelle Travers Dunn, investigated Ms. Schwartz's report. (ECF No. 65-1 at 11.) Mr. Eaton provided Ms. Dunn with text messages from November 6, 2019, in which Mr. Eaton asked Plaintiff if she was "on the call,"

2

and Plaintiff replied, "No[,] what call[?]" (ECF No. 65-26 at 3.) After interviewing Plaintiff on November 20, 2019, Ms. Dunn concluded that Plaintiff "provided dishonest information in comparison to what she stated in her text messages." (ECF No. 65-34 at 4.) PNC terminated Plaintiff on November 26, 2019. (ECF No. 68 at 2.)

Plaintiff then filed the instant case, asserting claims for race and sex discrimination and interference with FMLA rights under Title VII and MFEPA (Counts I, II, and VIII), retaliation under Title VII (Count VII), hostile work environment under Title VII and MFEPA (Counts III and VIII), interference and retaliation under the FMLA (Counts IV and V), and wrongful termination under Maryland law (Count VI). (ECF No. 1 ¶¶ 46–163.)

PNC moved for summary judgment on September 19, 2023. (ECF No. 65.) PNC argues that Plaintiff cannot establish a prima facie discrimination claim and that PNC had legitimate, nondiscriminatory reasons for terminating Plaintiff. (ECF No. 65-1 at 14–25.) PNC also contends that the undisputed facts show that PNC did not retaliate against Plaintiff, subject Plaintiff to a hostile work environment, interfere with Plaintiff's FMLA leave, or wrongfully discharge Plaintiff. (*Id.* at 29–38.) Plaintiff responds that the undisputed facts preclude the entry of summary judgment.[2] (*See generally* ECF No. 68.)

## II.    Legal Standard

The Court must grant summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "a reasonable jury could return a verdict for the nonmoving party." *Dulaney v. Packaging Corp. of Am.*, 673 F.3d 323, 330 (4th Cir. 2012). A material fact is

---

[2] Plaintiff states that she "withdraws" her wrongful termination claim. (ECF No. 68 at 28.) Additionally, Plaintiff dismissed her sex-based hostile work environment claim before the instant Motion was filed. (ECF No. 49.) Therefore, the Court does not address these claims.

one that "might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). At the summary judgment stage, the nonmoving party must "show that there is a genuine issue of material fact for trial." *Guessous v. Fairview Prop. Invs., LLC*, 828 F.3d 208, 216 (4th Cir. 2016) (citing *Anderson*, 477 U.S. at 248–49). "The nonmoving party must do so by offering 'sufficient proof in the form of admissible evidence' rather than relying solely on the . . . pleadings." *Id.* (quoting *Mitchell v. Data General Corp.*, 12 F.3d 1310, 1316 (4th Cir. 1993)). The Court views the evidence in the light most favorable to the nonmoving party. *See Scott v. Harris*, 550 U.S. 372, 378 (2007).

### III. Analysis

For the following reasons, the Court finds that there is no genuine dispute as to any material fact in this case and that judgment as a matter of law is proper as to each claim. *See* Fed. R. Civ. P. 56(a). Accordingly, the Court will grant PNC's Motion for Summary Judgment.[3]

#### A. Hostile Work Environment

The Court begins by addressing Plaintiff's hostile work environment claims. Title VII and its state law analogue, the MFEPA, prohibit an employer from subjecting their employee to a hostile work environment.[4] *See Robinson v. Priority Auto. Huntersville, Inc.*, 70 F.4th 776, 781 (4th Cir. 2023); Md. Code Ann., State Gov't § 20-606(a). "To demonstrate [the existence of] a

---

[3] Notably, Plaintiff fails to address many of the factual predicates for her claims as alleged in the Complaint. "[A]n issue raised in the complaint but ignored at summary judgment may be deemed waived." *Cox v. SNAP, Inc.*, 859 F.3d 304, 308 n.2 (4th Cir. 2017). Because Plaintiff does not attempt to explain how certain facts alleged in the Complaint are supportive of her claims, the Court will not attempt to "fathom all . . . possible arguments based on the . . . pleadings before it." *GTE S., Inc. v. Morrison*, 6 F. Supp. 2d 517, 526 (E.D. Va. 1998) ("To secure summary judgment, a party must assert the grounds alleged in the complaint; otherwise, they are deemed abandoned."). Rather, the Court will confine its analysis to the arguments asserted in Plaintiff's brief.

[4] Because Title VII and the MFEPA prohibit the same conduct, courts apply the same legal standard to claims arising under both statutes. *See Foster v. Summer Vill. Cmty. Ass'n*, 520 F. Supp. 3d 734, 741 (D. Md. 2021) (collecting cases).

4

racially hostile work environment, a plaintiff must show that there is '(1) unwelcome conduct; (2) that is based on the plaintiff's [race]; (3) which is sufficiently severe or pervasive to alter the plaintiff's conditions of employment and to create an abusive work environment; and (4) which is imputable to the employer.'" *Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011).

Plaintiff's brief addresses only one factual predicate for her hostile work environment claim: PNC's display of a "mural depicting an African-American slave" in its Timonium branch. (ECF No. 68 at 14.) But the Complaint contains no allegations regarding this mural. (*See generally* ECF No. 1.) Moreover, the Court previously denied Plaintiff leave to amend her pleading to include this allegation. (ECF No. 48 at 7.) Because a plaintiff "may not amend her complaint through argument in a brief opposing summary judgment," the Court must disregard Plaintiff's argument concerning the mural.[5] *Barclay White Skanska, Inc. v. Battelle Mem'l Inst.*, 262 F. App'x 556, 563 (4th Cir. 2008).

Because Plaintiff raises no other arguments in support of her hostile work environment claims, the Court will grant summary judgment in favor of PNC on these claims.[6]

---

[5] The Court's analysis would not differ even if this allegation had been pleaded. Plaintiff describes the personal offense she took to the mural's depiction and speculates that the mural "emboldened" customers to use racial epithets. (ECF No. 68 at 15.) But she does not explain how the depiction of the mural constituted conduct so "severe or pervasive" that it altered the conditions of her employment. *See Okoli v. City of Balt.*, 648 F.3d 216, 220 (4th Cir. 2011). Indeed, Plaintiff suggests the opposite by stating that she "continued to thrive" at PNC despite the mural's presence. (ECF No. 68 at 4.)

[6] The Court pauses here to address a comment made by Plaintiff concerning PNC's display of the mural. In her brief, Plaintiff makes the following puzzling assertion: "PNC in their motion state[s] that insofar as Abraham Lincoln tweeted and went on live TV to inform the nation that slavery was now illegal, clearly the picture is not of a slave and therefore not offensive." (ECF No. 68 at 15 (footnote omitted).) Of course, PNC did not state as much, and Plaintiff assures the Court that she is only "teasing." (*Id.* at n.16.) The Court appreciates that the serious nature of the facts in this case may elicit strong reactions. Nevertheless, Plaintiff's comment falls short of the level of civility expected in motions practice. *See* Local Rule 606 (D. Md. 2023) ("The Court expects . . . all counsel to conduct themselves in a professional and courteous manner in connection with all matters pending before the Court.").

### B. *Discrimination*

The Court next addresses Plaintiff's discrimination claims. Title VII and the MFEPA prohibit employers from discriminating against individuals based on, among other things, race and sex. *See* 42 U.S.C. § 2000e-2(a); Md. Code Ann., State Gov't § 20-606(a). When analyzing discrimination claims, courts employ the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973), "whereby a plaintiff first bears the burden of establishing a prima facie case, then the defendant bears the burden of presenting a legitimate, non-discriminatory reason for its employment action, and finally the plaintiff bears the burden of showing that the explanation proffered by the defendant was merely a pretext." *Spencer v. Va. State Univ.*, Civ. No. HEH-16-989, 2018 WL 627558, at *11 (E.D. Va. Jan. 30, 2018), *aff'd*, 919 F.3d 199 (4th Cir. 2019), *as amended* (Mar. 26, 2019). Absent direct evidence that a protected characteristic motivated a defendant's actions, a plaintiff establishes a prima facie discrimination case by showing: "(1) membership in a protected class; (2) satisfactory job performance; (3) adverse employment action; and (4) different treatment from similarly situated employees outside the protected class." *Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010).

Although the Complaint asserts numerous factual bases for Plaintiff's discrimination claims, only one of these grounds is addressed in Plaintiff's brief: the termination of Plaintiff's employment in November 2019. (ECF No. 68 at 15–22.) Termination from employment is the "quintessential" adverse employment action, *Ainsworth v. Loudon Cnty. Sch. Bd.*, 851 F. Supp. 2d 963, 976 (E.D. Va. 2012), and PNC does not argue otherwise. Nevertheless, PNC asserts that it terminated Plaintiff because, during PNC's investigation of the November 6, 2019 Incident, Plaintiff lied about having been aware of a conference call and thereby violated PNC's Code of Business Conduct and Ethics and Fidelity Bonding Policy. (ECF No. 65-1 at 23.)

Where, as here, a defendant has articulated a legitimate, non-discriminatory reason for an adverse employment action, the Court "need not—*and should not*—decide whether the plaintiff actually made out a prima facie case" of discrimination and/or retaliation. *EEOC v. Mfrs. & Traders Tr. Co.*, 429 F. Supp. 3d 89, 121 (D. Md. 2019). Instead, the Court must proceed to *McDonnell Douglas*'s final step: determining whether "a factfinder could conclude that [PNC's] proffered legitimate reason[s] [were] pretextual[.]" *Id.* Plaintiff can prove pretext by providing "sufficient evidence to find that [PNC's] asserted justification is false[.]" *Heiko v. Colombo Sav. Bank, F.S.B.*, 434 F.3d 249, 258–59 (4th Cir. 2006).

Plaintiff attempts to prove pretext by asserting that, contrary to PNC's assertion, she was not dishonest during PNC's investigation. (ECF No. 68 at 17.) According to Plaintiff, two separate calls were scheduled to take place at 8:30 a.m. on November 6, 2019. (ECF No. 68-1 at 5.) Plaintiff asserts: (1) that she dialed into one of these calls, but no other people were present on the call; (2) that, on November 6, 2019, she had no knowledge of a second call until she arrived at work; (3) that her text messages with Mr. Eaton concerned the call she had no knowledge of; and (4) that her statements to Ms. Dunn reflected these understandings and were therefore honest. (ECF No. 68 at 8–9, 17 n.19.)

Although PNC disputes Plaintiff's testimony regarding the existence of a second call, (ECF No. 65-1 at 23), the dispute is immaterial to the Court's analysis. "In assessing pretext, a court's focus must be on the perception of the decisionmaker, that is, whether the employer believed its stated reason to be credible." *Holland v. Wash. Homes, Inc.*, 487 F.3d 208, 217 (4th Cir. 2007) (quoting *Azimi v. Jordan's Meats, Inc.*, 456 F.3d 228, 246 (1st Cir. 2006)). The Court therefore cannot make an independent determination of whether an employer's asserted rationale for discharging a plaintiff "was wise, fair, or even correct[.]" *Hawkins v. PepsiCo, Inc.*, 203 F.3d 274,

279 (4th Cir. 2000) (quoting *DeJarnette v. Corning Inc.*, 133 F.3d 293, 299 (4th Cir. 1998)). Plaintiff presents no evidence to suggest that PNC did not honestly perceive Plaintiff to have lied during its investigation. In fact, Plaintiff acknowledges that Ms. Dunn's conclusions reflected, "[a]t worst," a "misunderstanding." (ECF No. 68 at 9.) However, "[p]retext is a lie, not merely a mistake." *Jordan v. Summers*, 205 F.3d 337, 344 (7th Cir. 2000). Because Plaintiff has not shown that PNC's asserted rationale is disingenuous, her pretext argument is unavailing.

Plaintiff also attempts to disprove PNC's proffered rationale on the ground that "no one at PNC called the underwriter of the fidelity bond to report [Plaintiff's] alleged 'dishonesty.'" (ECF No. 68 at 18.) While Plaintiff is correct that PNC did not contact the underwriter, her attempt to establish pretext on this basis amounts to speculation. Indeed, PNC explains in its Motion that it had no duty to contact the underwriter because no loss or potential loss arose from Plaintiff's actions. (ECF No. 65-1 at 25.) Although Plaintiff emphasizes the "seriousness" of a fidelity bond violation, she makes no effort to explain why PNC's explanation for failing to contact the underwriter is dubious. (ECF No. 68 at 18.) Consequently, she fails to explain how PNC's failure to contact the underwriter constitutes "sufficient evidence to find that [PNC's] asserted justification is false." *Heiko*, 434 F.3d at 259; *see also Hawkins*, 203 F.3d at 281 n.1 (recognizing that "mere speculation" is insufficient to establish pretext).

At bottom, PNC has articulated a legitimate, non-discriminatory reason for firing Plaintiff and Plaintiff has failed to prove that the reason was false. Accordingly, Plaintiff has not established pretext and PNC is entitled to summary judgment on Plaintiff's discrimination claims.

### C. *Title VII Retaliation*

The Court next addresses Plaintiff's retaliation claims. Title VII prohibits an employer from retaliating against an employee based on their opposition to an "unlawful employment

8

practice[.]" 42 U.S.C. § 2000e-3(a). To prove retaliation, a plaintiff may either: (1) produce evidence that reflects a discriminatory attitude and bears directly on an employment decision or (2) establish a prima facie case under *McDonnell Douglas*. *See Brinkley v. Harbour Recreation Club*, 180 F.3d 598, 606–07 (4th Cir. 1999). The elements of a prima facie retaliation case are: (1) engagement in a protected activity; (2) an adverse employment action; and (3) a causal link between the two. *See Coleman v. Md. Ct. App.*, 626 F.3d 187, 190 (4th Cir. 2010).

Although Plaintiff argues that PNC terminated her in retaliation for protected activity, (ECF No. 68 at 16–22), the Court has already determined that PNC articulated a legitimate, non-discriminatory basis for this decision and that Plaintiff's pretext arguments are unpersuasive. Consequently, this argument is unavailing.

Plaintiff's only other argument in support of her retaliation claim is that PNC directed her to "reengage" with a customer that left an offensive voicemail after Plaintiff informed PNC about the voicemail and asked PNC to close the customer's account. (ECF No. 68 at 16.) However, the Complaint does not allege retaliation on these grounds. (*See* ECF No. 1 ¶¶ 136–57.) That issue notwithstanding, Plaintiff's argument is unpersuasive. Protected activity must be "directed at conduct prohibited by Title VII." *Burgess v. Bowen*, 466 F. App'x 272, 282 (4th Cir. 2012). Here, Plaintiff's alleged protected activity amounted to a request to close an account and did not identify unlawful conduct perpetrated by PNC. (ECF No. 68 at 21; ECF No. 68-23 at 1.) Because Plaintiff does not explain how PNC's direction to reengage with the offensive customer was prompted by Plaintiff's opposition to a practice made unlawful by Title VII, her argument is without merit. *See* 42 U.S.C. § 2000e-3(a).

For these reasons, the Court grants summary judgment in favor of PNC on Plaintiff's Title VII retaliation claim.

### D.     *FMLA Interference and Retaliation*

Lastly, the Court addresses Plaintiff's FMLA claims. The FMLA affords eligible employees "a total of twelve workweeks of leave during any twelve-month period and, upon return to work, restoration to the position held when the leave commenced or to an equivalent position." *Rodriguez v. Smithfield Packing Co.*, 545 F. Supp. 2d 508, 515 (D. Md. 2008). Employers may not interfere with rights conferred by the FMLA. *See* 29 U.S.C. § 2615(a)(1). To establish a claim for FMLA interference, a plaintiff must show that: (1) she is entitled to an FMLA benefit; (2) her employer interfered with the provision of that benefit; and (3) the interference caused harm. *See Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015).

Plaintiff's arguments in support of her interference claim are unavailing. Plaintiff contends that PNC interfered with her FMLA leave insofar as her manager, Ms. Schwartz, requested approval in September 2019 to "replace" Plaintiff after she had already exhausted her leave. (ECF No. 68 at 24.) However, Plaintiff resumed her work at PNC in October 2019 in the same position she had held before taking her full allotment of FMLA leave. (ECF No. 65-1 at 9; ECF No. 68-1 at 4.) She therefore fails to demonstrate that PNC did not restore her to a previous position or that PNC deprived her of a benefit accrued prior to the start of her FMLA leave.[7] *See* 29 U.S.C. § 2614(a)(1). Plaintiff also suggests that PNC terminated her because it "wanted to replace [her] now that [her] FMLA [leave] was exhausted[.]" (ECF No. 68 at 25.) However, termination that occurs after the exhaustion of FMLA leave does not constitute interference with leave.[8] *See Jones*

---

[7] Even if PNC had replaced Plaintiff, an FMLA violation would not necessarily have resulted. An employer may "replace an employee who has taken . . . FMLA-qualifying leave, provided that the employer reinstates the employee to an equivalent position once she returns." *Green v. New Balance Ath. Shoe, Inc.*, 182 F. Supp. 2d 128, 132 (D. Me. 2002) (citing 29 U.S.C. § 2614(a)(1)(B)).

[8] Plaintiff also states that Ms. Schwartz "kept bringing up her FMLA leave," expressed "concern" about the leave, and "seemed detached and less invested in" Plaintiff after she returned to PNC in October 2019. (ECF No. 68 at 23–24.) But Plaintiff fails to explain how any of these actions constituted harmful

10

*v. Gulf Coast Health Care of Del., LLC*, 854 F.3d 1261, 1268 (11th Cir. 2017).

Plaintiff's FMLA retaliation claim fares no better. This claim requires a showing that: (1) Plaintiff engaged in a protected activity; (2) PNC took an adverse employment action against her; and (3) the adverse employment action was causally connected to the protected activity. *See Roberts v. Gestamp W. Va., LLC*, 45 F.4th 726, 738 (4th Cir. 2022) (applying the *McDonnell-Douglas* burden-shifting framework to an FMLA retaliation claim). Plaintiff argues that she was terminated in retaliation for taking FMLA leave, (ECF No. 68 at 28), but PNC has proffered a legitimate, non-discriminatory reason for the termination and, for the reasons stated above, Plaintiff has failed to demonstrate that the reason was pretextual. Given this, Plaintiff's FMLA retaliation claim is without merit.

Because Plaintiff fails to establish an FMLA interference or retaliation claim, the Court grants summary judgment in favor of PNC on these claims.

### IV.     Conclusion

For the foregoing reasons, the Court will grant PNC's Motion for Summary Judgment and dismiss the Complaint by accompanying order.

DATED this __7__ day of March, 2024.

BY THE COURT:

_____
James K. Bredar
Chief Judge

---

interference with FMLA leave. *See Adams v. Anne Arundel Cnty. Pub. Sch.*, 789 F.3d 422, 427 (4th Cir. 2015). Accordingly, these arguments are without merit.